**Maria V. SANCHEZ, Plaintiff(s),**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant(s).**

**Civil No. 02–2123 (JAG).**

United States District Court, D. Puerto Rico.

June 20, 2003.

Samuel F. Pamias Portalatin, San Juan, PR, for Plaintiff.

Camille L. Velez–Rive, United States Attorney's Office, Torre Chardon, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On July 23, 2002, plaintiff Maria Sanchez ("Sanchez") sought review, pursuant to section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g), of a final decision rendered by the Social Security Commissioner ("Commissioner") denying her claim for disability insurance benefits. Both parties have filed memoranda in support of their respective positions (Docket Nos. 14,17) Upon a review of the record, the Court concludes that the Commissioner's findings are supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

## FACTUAL BACKGROUND

Sanchez is a forty-five year old woman who has attained a sixth grade education level and worked in a sweater factory for fifteen years. On September 14, 1993, Sanchez filed an application for disability and disability insurance benefits alleging an inability to work since October 20, 1992, due to shoulder and hand pain. The Social Security Administration ("SSA") denied the application initially, on April 10, 1997, as well as on reconsideration on April 16,

1998. On May 25, 1999, the Administrative Law Judge ("ALJ"), upon a *de novo* review, found that Sanchez was not disabled. On May 21, 2002, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner. Thus, the decision is subject to judicial review pursuant to section 405(g) of the Act.

Sanchez has two main contentions. First, she alleges that the ALJ erred as a matter of law by failing to assess Sanchez's Residual Functional Capacity ("RFC") according to the treating physician's medical report. She asserts that the treating physician's opinion should be given more weight than that of other examining physicians. Moreover, she claims that in his decision, the ALJ failed to clarify the weight given to the State Agency medical consultant's opinion as required by the Act. Second, she contends that after determining that Sanchez was unable to return to her prior job, the ALJ erred in finding an alternate job was available to Sanchez given her age, education and medical condition, as required by the Act.

The ALJ found that Sanchez met the disability insured status requirements of the Act from September 15, 1995 to December 31, 1997, but not thereafter. Although the ALJ found that Sanchez experienced physical disabilities, he ruled that she did not have an impairment or combination of impairments listed in (or analogous to one listed in) Appendix 1, Subpart P, Regulations No. 4. Moreover, the ALJ found that the intensity and persistence of Sanchez's complaints and her alleged functional limitations were unsupported by the evidence. Finally, he concluded that Sanchez had the RFC to perform light work, with the exception of carrying or lifting more than twenty pounds, carrying out complex instructions and maintaining frequent contact with the public. Although the ALJ concluded that Sanchez could not return to her past work, he ultimately ruled that she was not disabled pursuant to the Act because she remained able to perform light work.

## DISCUSSION

In order to receive disability insurance benefits, Sanchez bears the burden of proving that she is disabled within the meaning of the Act. *See, e.g., Deblois v. Secretary of HHS*, 686 F.2d 76, 79 (1st Cir.1982). Sanchez is considered disabled within the meaning of the Act only if she is unable to perform any substantial gainful work because of a medical condition that can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 416(i)(1), 423(d)(1). Her impairments must be so severe as to prevent her from working not only in her usual occupation but in any other substantial gainful work considering her age, education, training, and work experience. *See* 42 U.S.C. §§ 423(d)(2)(A). Evidence of a physical impairment cannot suffice for an award of disability insurance benefits; Sanchez must also be precluded from engaging in any substantial gainful activity by reason of such impairment. *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1120 (1st Cir.1986).

The fact findings made by the ALJ "are conclusive when supported by substantial evidence, 42 U.S.C. §§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999). The resolution of conflicts in the evidence and the ultimate determination of disability are for the ALJ, not the courts. *See Rodriguez v. Secretary of HHS*, 647 F.2d 218, 222 (1st Cir.1981). Moreover, Sanchez's complaints cannot provide the basis of entitlement when they are not supported by medical evidence. *Avery v. Sec-*

*retary of HHS,* 797 F.2d 19, 20–21 (1st Cir.1986).

■ For the reasons set forth below, the Court finds that there is sufficient evidence in the record to support the ALJ's conclusion that Sanchez was not disabled between September 14, 1995, the date of the last administrative decision, and December 31, 1997, the date that she last met the insured requirements.

The five-step evaluation process to determine an individual's disability for purposes of disability insurance benefits is set forth in 20 C.F.R. § 404.1520. The first and second steps require that the claimant be currently unemployed and have a severe impairment. The third step mandates that the impairment be equivalent to one listed in the regulations' Appendix 1. The fourth step dictates that the claimant be unable to perform his past related work and finally, the fifth step requires that the claimant's impairment prevent him from engaging in other work of the sort found in the national economy. Sanchez alleges that the ALJ erred in the fifth step of this evaluation process.

At the fourth step, the ALJ ruled that Sanchez's medical condition, which evidenced carpal tunnel syndrome in the left hand, a left shoulder muscle tear and joint effusion, would be exacerbated by strenuous activities, thus she was unable to return to her past related work. However, based on her successful surgery and positive response to medication, the ALJ took other factors such as age, education, past work experience and RFC into account, and ruled that although Sanchez could not have returned to her past work during the critical period, she had the capacity to perform "light work of a routine, repetitive and simple nature" (Tr. 31).

In reaching the conclusion about her RFC, the ALJ was not persuaded by Dr. Gerena, the general practitioner who treated Sanchez. Although Dr. Gerena noted

motor, sensory and reflex problems, Dr. Benitez, a consulting neurologist, performed several neurological exams which failed to show any such conditions. Furthermore, Dr. Trujillo, indicated that Sanchez appeared depressed and anxious, however, she failed to show the presence of any psychiatric disorder. Thus, although both the treating physicians claimed Sanchez was disabled, no evidence was presented as to a significant psychiatric disorder. The lack of medical evidence coupled with section 404.1569 and section 200.00 of Appendix 2 to Subpart P guided, the ALJ's determination that Sanchez is not permanently disabled and is capable of working.

**A. Proper Weight of Treating Physician's Opinion to Assess RFC**

■ Sanchez contends that the ALJ was required to take into consideration the functional limitations established by Dr. Trujillo, her treating physician. It is well established that the treating physician's opinions must be given considerable weight in determining disability, however, they are not conclusive. *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.1994). Thus, the ALJ may disregard the treating physician's opinion with a showing of good cause. Moreover, "the good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* (citing *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985)).

■ The ALJ did consider the treating physicians' testimony, however, he ultimately rejected the conclusion that Sanchez was disabled. Dr. Trujillo's assessment was incomplete because it consisted only of a mental RFC and not a physical RFC. Moreover, the mental RFC only in-

dicated that Sanchez "ha[d] developed a severe depressive chronic condition," rather than diagnosing her with depression (Tr. 394). There is substantial evidence in the record to support the ALJ's decision to disregard the physicians' conclusion because the treating physicians' diagnoses were based mainly on Sanchez's statements about the pain that she felt, rather than on objective medical tests and findings. *See Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985).

Moreover, the First Circuit has recognized that a specialist's medical opinion may be given more weight than other physicians. *Alvarado v. Weinberger,* 511 F.2d 1046, 1049 (1st Cir.1975). Specialists who examined Sanchez found little or no physical evidence of a severe physical disability. Thus, the treating physicians' opinions were not controlling on the ALJ. The lack of medical evidence supporting the conditions alleged by Sanchez constitutes good cause for the ALJ to disregard the functional limitations established by Dr. Trujillo. Although the ALJ's interpretation of the evidence in this manner appears to constitute an impermissible lay interpretation of raw medical data prohibited under *Perez v. Secretary of HHS,* the prohibition is inapplicable here because Dr. Trujillo did not provide any medical data or clinical finding that Sanchez was permanently disabled. 958 F.2d 445, 446 (1st Cir.1991).

Sanchez also contends that the ALJ failed to clearly identify the different criteria that were used to influence his decision. The ALJ indicated that he used Rule 202.16 of the Medical–Vocational Guidelines in conjunction with Sanchez's profile to determine her disability. (Tr. 35–36 at Findings 11–13). While Sanchez is correct in alleging that the decision must be based on evidence from the record, it was proper for the ALJ to reach his decision based on the lack of evidence or medical data affirming the existence of Sanchez's alleged disability.

## B. Sufficiency of the Evidence Regarding the Existence of an Alternative Job Based on the RFC

The ALJ ruled that there was no sufficient medical evidence to confirm Sanchez's allegations regarding the severity of her condition. Although there were objective findings that affirmed her allegations of pain, such as carpal tunnel syndrome, she did not allege that any of the symptoms related to her mental or physical condition meet any of the listed impairments in the Act. *See* 20 C.F.R. Part 404, Subpart P., App. 1. Finally, Sanchez claims that the ALJ erred in determining that she can be considered a skilled person able to find another job in the national economy. The ALJ concluded that given her relatively young age, work experience and her disposition at trial, where "she moved freely during the hearing," Sanchez was capable of performing light work during the critical period (Tr. 32). While her RFC was reduced due to her physical condition, she is not disabled because she is still able to partake in a different job in the national economy. Under the CFR guidelines, Sanchez is considered a younger person because she is under fifty years of age therefore, her age would generally not be considered as an obstacle to her finding work 20 C.F.R. 404.1565(b).

Additionally, the ALJ noted that Sanchez responded well to the medication she was taking (Tr. 32). This was further evidenced by her appearance and physical manifestation at trial as "[s]he moved freely during the hearing ... [and] during the period in consideration she seldom used any type of brace on her hands" (Tr. 32). "Implicit in a finding of disability is a determination that existing treatment alternatives would not restore a claimant's

ability to work." *Tsarelka v. Secretary of HHS*, 842 F.2d 529, 534 (1st Cir.1988). Her physical appearance coupled with her educational background and skill in garment manufacturing, permitted the ALJ to conclude that she would be able to find another job.

■ The ALJ is entitled to deference, especially when, as here, his conclusions are supported by specific findings. *DaRosa v. Secretary of HHS*, 803 F.2d 24, 26 (1st Cir.1986). The Commissioner is charged with the duty to weigh the evidence, to resolve the material conflicts in the testimony, and to determine the case accordingly. *Tremblay v. Secretary of HHS*, 676 F.2d 11, 12 (1st Cir.1982). The Commissioner's findings are conclusive if supported by substantial evidence, even if the Court might have decided otherwise had it heard the same evidence *de novo*. *Lizotte v. Secretary of HHS*, 654 F.2d 127, 128 (1st Cir.1981). The Court finds that there is substantial evidence to support the Commissioner's decision that Sanchez failed to establish a disability pursuant to the Act. Accordingly, the Court will affirm the Commissioner's decision denying Sanchez disability insurance benefits.

### CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's decision denying plaintiff Sanchez's request for disability insurance benefits.

Judgment shall enter accordingly.

IT IS SO ORDERED.